UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MICHAEL J. DICENZO, JR., )
        Plaintiff, )
         )
      v. )    Civil Action. No. 12-30067-KPN
         )
PROBATE AND FAMILY COURT )
DEPARTMENT BERKSHIRE )
DIVISION, ET AL., )
        Defendants )

REPORT AND RECOMMENDATION FOR
DISMISSAL PURSUANT TO 28 U.S.C. § 1915
June 11, 2012

NEIMAN, M.J.

On April 14, 2012, Michael J. Dicenzo, Jr. ("Plaintiff"), an inmate in custody at the Worcester County House of Correction in West Boylston, Massachusetts, filed a self-prepared civil rights complaint naming as Defendants the Berkshire County Probate and Family Court Department, Probation Officer John Lander, and Brian Alerie, the Director of the Phoenix House Community Corrections Center in Pittsfield. The complaint is written in narrative "stream of consciousness" and is not organized or entirely coherent. From what can be gleaned, however, Plaintiff alleges that the Defendants have conspired to violate his civil rights by not following the legal procedures in connection with the adoption of his son, Marcus Joseph Dicenzo. He claims he had no knowledge of the adoption of his son until *after* the final judgment was rendered. Specifically, he claims that the statement (return of service) made in November 2002 by Francis B. Marinaro, the Register of Probate, which indicated that

Dicenzo "personally" was served the notification/citation (pursuant to Mass. Gen. Laws. ch. 210, § 6) regarding the adoption proceeding, was false.[1] Plaintiff further contends that he was in custody at the time the purported service was made and only spoke with his attorney and Defendants on that date.[2]

In addition, Plaintiff contends that Defendant Lander is his son's stepfather and played a role in the adoption (as the petitioner for adoption). Therefore, Plaintiff asserts, Lander was not authorized to serve the notification. Plaintiff claims the same lack of authorization is true with respect to Defendant Alerie, a former probation officer who was at one time Plaintiff's probation officer, because during the time period in question Plaintiff was not on probation.

Plaintiff concedes that he lacks all the factual evidence he needs and prays that, if Defendants file a motion to dismiss, he be allowed to take discovery. Plaintiff also seeks a subpoena of documents demonstrating that he was detained by the Pittsfield District Court on the day of the purported service and receipt of service. Further, Plaintiff alleges abuse of Defendants' discretionary function of their official positions and claims that they knowingly and willfully conspired to interfere with the

---

[1] An attachment to the complaint indicates that the Order of Notice was dated November 1, 2002, and that service was made "in hand" on Plaintiff by Antonio J. Marcella, Deputy Sheriff of Berkshire County. See Docket No. 1-1 at 11. A Decree of Adoption was issued on January 17, 2003. See Docket No. 1-1 at 13.

[2] Attached to the complaint was an Order of the Probate and Family Court, Berkshire Division, in the case *In the matter of the Adoption of Marcus Joseph Dicenzo*, Docket No. 02A0048, dated March 26, 2012, directing that Plaintiff was entitled to receive a copy of a number of documents in the matter. See Docket No. 1-1 at 5.

adoption.[3]

As relief, Plaintiff requests that this court immediately reverse, terminate, or overturn the adoption order of his son and grant him custody. Plaintiff, however, is not seeking monetary damages notwithstanding the alleged egregious conduct of Defendants. Accompanying his original complaint, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* along with his prison account statement.

DISCUSSION

I. The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Plaintiff's financial disclosures in his Application to Proceed *in forma pauperis* and his prison account statement, the court finds that he lacks sufficient funds to pay the $350.00 filing fee for this action. Accordingly, Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED. However, because Plaintiff is a prisoner, he is obligated to make payments toward the filing fee, pursuant to the Prison Litigation Reform Act. See 28 U.S.C. § 1915

---

[3] Plaintiff also seeks testamentary evidence, alleging that his former attorney, Michael J. McCarthy, will testify and support his position. Plaintiff also claims that he was contesting the order to pay child support after being informed that his son had been adopted. Included as an attachment to the complaint is a letter dated November 14, 2003, from McCarthy to the First Assistant Register of the Berkshire Probate and Family Court indicating that Plaintiff did *not* contest the adoption of his son and that the adoption was approved in January of 2003. The letter also indicated that Plaintiff continued to receive child support demands from the Massachusetts Department of Revenue ("MDOR"), and requested that the First Assistant Register issue to the MDOR a copy of the Judgment and other documentary proof of the adoption and the termination of child support. See Docket No. 1-1 at 14. On January 5, 2004, a letter was sent from the First Assistant Register to the MDOR advising the MDOR of the adoption so that it may determine Plaintiff's support obligations. See Docket No. 1-1 at 15.

(the *in forma pauperis* statute). Accordingly, it is hereby Ordered that:

    a.    Plaintiff is assessed an initial partial filing fee of $.97, pursuant to 28 U.S.C. § 1915(b)(1)(A);[4] and

    b.    The remainder of the fee of $349.03 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions filed by Plaintiff; however, for purposes of clarification for crediting any funds received from Plaintiff, this court intends that any funds received from his prison account first be applied to any prior order of a court assessing a filing fee pursuant to 28 U.S.C. § 1915. In other words, payments shall be collected consecutively and not simultaneously with other filing fee assessments.

II.    <u>The Court May Screen the Complaint</u>

Because Plaintiff is a prisoner, the screening provisions of the Prison Litigation Reform Act ("PLRA") Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996) come into play. The PLRA contains several provisions which grant the court authority to screen and dismiss prisoner complaints. *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff

---

[4] The initial partial assessment represents 20% of the average monthly deposits in Plaintiff's prison account for the period from November 1, 2011, through January 21, 2012, as reflected by the certification by the Treasurer. This calculation was manually prepared based on the prison account statement submitted and is made without prejudice to Plaintiff seeking reconsideration based on certified account information in accordance with the formula set forth in 28 U.S.C. § 1915(b).

seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). Section 1915A also authorizes the court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In connection with this preliminary screening, Plaintiff's *pro se* complaint is construed generously. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000). Yet even under a broad reading, the complaint is legally deficient and should be dismissed in its entirety for the reasons set forth below.

III.  Failure to Plead Claims in Accordance With Fed. R. Civ. P. 8

First, Plaintiff's complaint materially fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 provides, in relevant part, that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests." *Phelps v. Local 0222*, No. 09-11218, 2010 WL 3342031, at *5 (D. Mass. August 20, 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotations and citations omitted)). In addition, the pleadings "must afford the defendants a meaningful opportunity to mount a defense." *Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc.*, 2011 WL 2681195, at *2, (D. Mass. 2011) (quoting *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal punctuation and additional citations omitted)). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Id.* (quotation omitted). While the "First Circuit holds a *pro se* litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that *pro se* complaints are held to no standard at all." *Green v. Massachusetts*, 108 F.R.D. 217, 218 (D. Mass. 1985). Thus, "the requirements of Rule 8(a)(2) are minimal – but minimal requirements are not tantamount to nonexistent requirements." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted). Under Rule 8, a plaintiff must plead more than a mere allegation that the defendant has harmed him [or her]. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

Here, Plaintiff's complaint fails to set forth the underlying factual basis for liability of any of the defendants. Indeed, apart from referencing Defendants Lander

and Alerie and alleging a willful conspiracy, there is nothing in the complaint that sets forth any basis for these wholly conclusory allegations. Further, by collectively asserting claims against the defendants, Plaintiff fails to meet the pleading requirements for proceeding in this court. *See Bagheri v. Galligan*, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (complaint deficient because, *inter alia*, it fails to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's requirement of an amended complaint] to remedy this deficiency did not demand more than the minimum necessary to satisfy notice pleading standards."). *See also Atuahene v. City of Hartford*, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2nd Cir. 2001) (stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard.").

Further, Plaintiff fails to give the minimal "who, what, when, where, and why" information as to each Defendant with respect to the roles played in the alleged conspiracy. "To present an adequate conspiracy claim, there must be allegations of a common understanding between the conspiring parties." *Dickinson v. Flanagan*, 893 F.2d 1338 (Table), 1990 WL 1421, *1 (9th Cir. 1990) *(citing Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989), *cert. denied* 110 S.Ct. 69 (1989)). Here, the complaint is completely devoid of any underlying facts to support conspiracy claims; there is only one paragraph that generally alleges an amorphous conspiracy. The court is not bound to accept Plaintiff's pure legal conclusions (without any factual underpinnings), as plausible claims upon which relief may be granted. In short, it

would be immensely unfair to require each of the named Defendants to peruse the complaint as pled and cull out Plaintiff's claims for which liability would attach. Accordingly, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim upon which relief may be granted).

IV.     Sovereign Immunity Bars Claims Against the Probate and Family Court

Apart from the Rule 8 deficiencies, the complaint suffers from other legal impediments. As noted, Plaintiff asserts claims against the Berkshire County Probate and Family Court, a part of the Massachusetts judicial system. Plaintiff's claims are not cognizable, however, because the Commonwealth of Massachusetts and the Courts of the Commonwealth of Massachusetts (as instrumentalities of the State), are not subject to suit in this court, under the doctrine of sovereign immunity grounded in the Eleventh Amendment.[5]

Here, Plaintiff has not set forth any basis for this court to conclude that sovereign immunity has been waived by the Commonwealth of Massachusetts. Therefore any claims against that Defendant must be dismissed *sua sponte*. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless

---

[5] The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

the State has consented to suit); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Pugh*) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,. . . a State cannot be sued directly in its own name regardless of the relief sought."); *cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of §1983); *Quern v. Jordan*, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (no unequivocal abrogation of the Commonwealth's 11th Amendment immunity).

V.    Absolute Judicial Immunity Bars Claims Against State Judges

Even if this court construed Plaintiff's claims of denial of due process as actually presenting challenges to rulings by the Berkshire County Probate and Family Court judge, his claims fair no better. Judges of the Berkshire County Probate and Family Court judge are entitled to absolute judicial immunity, which protects judges from acts performed within the scope of their jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); *Pierson v. Ray*, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); *Allard v. Estes*, 197 N.E. 884, 886 (1935) (stating that it is "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law."). The reason for recognizing this form of immunity is that:

9

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (quoting *Forrester v. White*, 484 U.S. 219, 226-27 (1988)).

Here, although Plaintiff may believe that the state court judge erred in making rulings adverse to him, there is no reasonable or credible allegation, nor could there be, that the actions or inactions of the state court judge were taken outside the scope of his or her jurisdiction. Thus, even if the judge erred in his or her decisions, the actions or inactions would not constitute the type of extra-judicial activity exempting the judge from entitlement to absolute judicial immunity.

Plaintiff may also believe that the court should disregard the doctrine entirely, or that his due process claims trump the absolute judicial immunity doctrine; however, such a belief would be misplaced as contrary to established law. In the end, to the extent Plaintiff's claims are construed as asserting claims against the state court judge rather than the Berkshire County Probate and Family Court itself, the claims should also be dismissed *sua sponte.*

VI. Adequate State Remedy

As an additional matter, Plaintiff cannot establish due process violations

10

unless he can show that he does not have an adequate state remedy to redress his grievances. When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate postdeprivation remedy, there is no denial of due process. *See Hudson v. Palmer*, 468 U.S. 517, 531-37 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-44 (1981); *O'Neill v. Baker*, 210 F.3d 41, 50 (1st Cir. 2000). *See also Riordan v. Martin*, 51 F.3d 264 (1st Cir. 1995) (unpublished disposition stating that "[s]ince inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory." citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Here, there is nothing in Plaintiff's complaint from which this court could infer that he is unable to pursue state court remedies. Accordingly, Plaintiff's due process claims also are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

VII. <u>Failure to State Plausible Claims Upon Which Relief May Be Granted; Statute of Limitations as a Bar to Claims</u>

As an additional matter, Plaintiff claims constitutional violations which took place in 2003. Thus, on its face, it is clear that all of Plaintiff's due process claims -- stemming from the 2003 adoption order -- are barred by the statute of limitations for civil rights actions. Thus, Plaintiff's complaint fails to set forth any cognizable federal claim upon which relief may be granted.

The statute of limitations for claims under the Civil Rights Act in the District of Massachusetts is three years. *Nieves v. McSweeney*, 241 F.3d 46, 52-53 (1st Cir. 2001) (§ 1983); *Johnson v. Rodriguez*, 943 F.2d 104, 107 (1st Cir. 1991) (§ 1981);

11

*Govan v. Trustees of Boston Univ.*, 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§ 1981, 1985). *Cf. Rodriguez-Garcia v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury claims); *Owens v. Okure*, 488 U.S. 235 (1989). Since more than three years have elapsed since the alleged § 1983 violations accrued, the statute of limitations applies here.[6]

It is true, of course, that a complaint may be dismissed on statute of limitations grounds "only if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'" *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)). However, as the First Circuit has held, "a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous" under the *in forma pauperis* statute. *Johnson v. Rodriguez*, 943 F.2d 104, 107 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992) (quoting *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992)). That is true here as well.[7] Thus,

---

[6] The accrual date for a § 1983 action is the date when Plaintiff knew or should have known that he was harmed. *See, e.g.*, *Villanueva-Méndez v. Nieves-Vázquez*, 440 F.3d 11, 15 (1st Cir. 2006) (citing Chardón v. Fernández, 454 U.S. 6, 8 (1981)). Here, there is no basis for assuming that Plaintiff was not aware immediately after the Order of Adoption issued or, at the very least, some time in 2004, as evidenced by Attorney McCarthy's letter to the First Assistant Registrar of Probate attempting to rectify Plaintiff's child support obligations in light of the adoption. In light of this information, the court cannot find a basis for application of equitable tolling.

[7] Although the statute of limitations is an affirmative defense, and Fed. R. Civ. P. 8(a) does not require a plaintiff to plead facts to avoid potential affirmative defenses, a

Plaintiff's federal claims should be deemed to be frivolous as that term is used in legal parlance.

VIII. <u>Jurisdictional Bars to Plaintiff's Claims</u>

In addition to the legal deficiencies resulting in the failure to state claims upon which relief may be granted, there are a number of jurisdictional problems with Plaintiff's complaint.

    1. <u>Rooker-Feldman Doctrine Bars Claims</u>

As relief, Plaintiff clearly seeks to vacate the state court order of adoption and for an award of custody to him. To the extent that Plaintiff is seeking federal review of any *final* decision of a state court, this court lacks subject matter jurisdiction to conduct such review, pursuant to the *Rooker-Feldman* doctrine. The doctrine is a distillation of two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and precludes a federal action if the relief requested would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. *See Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994); *Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc.*, 544 U.S. 280 (2005) (doctrine applies to cases by state court losers seeking review and

---

complaint can be dismissed for failure to state a claim if the allegations therein show that relief is barred by the relevant statute of limitations. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim....").

rejection of state court judgments rendered prior to commencement of federal suit).

The *Rooker-Feldman* doctrine "is jurisdictional, and [it] . . . cannot be ignored." *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 n.7 (1st Cir. 2004) (citations omitted). "[T]he proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." *Davison v. Gov't of Puerto Rico-Puerto Rico Fifefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006). Here, the court reasonably infers from Plaintiff's allegations that he is the "state-court loser" and that the state-court judgment was rendered before the district court proceedings commenced.

      2.      <u>Abstention Doctrine Bars Claims</u>

Similarly, to the extent that Plaintiff's state litigation is still *pending*, in that it may be subject to review by the state court, this court should abstain from judicial review of the pending case. The federal courts have long recognized the "fundamental policy against federal interference with state criminal proceedings." *Younger v. Harris*, 401 U.S. 37, 46 (1971); *In re Justices of the Superior Court Dept. of the Massachusetts Trial Court*, 218 F.3d 11, 16 (1st Cir. 2000). *See also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237-38 (1984) (federal court abstention from jurisdiction appropriate where "federal claims could have been or could be presented in ongoing state judicial proceedings that concern important state interests"). The *Younger* abstention doctrine has been applied to other non-criminal proceedings.

A federal court must abstain from reaching the merits of a case over which it

14

has jurisdiction so long as there is: (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding); that (2) implicates an important state interest; and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. *See Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996) *citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here, Plaintiff's claims of due process violations during the course of the state adoption proceedings appear to implicate all three prongs of the test, warranting *Younger* abstention in this case. In short, there are no circumstances alleged that would exempt Plaintiff from application of *Younger* principles. *See, e.g., Saunders v. Flanagan*, 62 F. Supp. 2d 269, 634 (D. Conn. 1999) (general allegations of misconduct, without specific factual allegations in support, are insufficient to invoke one of the exceptions to the *Younger* doctrine).

3. <u>Lack of Jurisdiction to Grant Mandamus Relief</u>

Because Plaintiff seeks an order vacating the adoption and awarding custody of his son to him, he is, in essence, seeking in part, a writ of mandamus compelling the state court judge to enter an order with respect to his state court litigation.

Section 1361 of Title 28 governs the original jurisdiction of the district court of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. This applies to *federal* officers, employees or agencies, but does not apply to a *state* court judge or clerk. *See Burnett v. Superior Court of Marin County*, 573 F.

Supp. 345 (N.D. Cal. 1983) (district court lacks jurisdiction to compel state court to perform its alleged duty).

Similarly, this court lacks jurisdiction under 28 U.S.C. § 1651 to compel a state judicial officer to act. Section 1651 provides authority to the Supreme Court and all courts established by an Act of Congress to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Section 1651 is not available in this case because a federal district court cannot, by writ of mandamus, direct a state court or judicial officer to perform an official act. *See In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) (petition for writ of mandamus filed under § 1651 denied; federal court cannot control or interfere with state court litigation by way of mandamus); *See also Offutt v. Kaplan*, 884 F. Supp. 1179, 1183, 1187-88 (N.D. Ill. 1995) (federal action brought under § 1651 and § 1983 against presiding judge in state custody proceedings dismissed on ground that a federal district court has no jurisdiction to review state judicial proceedings) (citing, inter alia, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)).

    4.    <u>Domestic Relations Exception Bars Plaintiff's Claims</u>

As a final matter, the court should abstain from interfering with Probate and Family Court Orders that involve child custody, visitation, or support issues, because of the domestic relations exception to jurisdiction. The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children, because state

16

courts have developed the proficiency and specialized resources necessary to handle such cases. The wisdom behind the domestic relations exception is applicable to Plaintiff's claims.

The Supreme Court firmly articulated and clarified the domestic relations exception in *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). There, the Court held that "the domestic relations exception, as articulated by this Court ... divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703. The rationale underlying this holding is that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id.* at 704. For its part, the First Circuit has constantly adhered to the exception. *See Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir. 1981) ("It is firmly established that the federal courts do not have diversity jurisdiction to grant divorces, determine alimony and support obligations, or resolve conflicting claims of divorced parents to the custody of their children."); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.").

Here, there is no question that Plaintiff is seeking to put before this court matters relating to child custody. Were this court to exercise jurisdiction, it would be required to investigate the needs of the child as well as Plaintiff's current capabilities as a family provider. The court, however, lacks the power and the resources of the

state probate and family courts to best serve the family interests.

Relatedly, the presence of family-related matters in these cases argues strongly for the propriety of total abstention. Under First Circuit law, abstention may be broadly construed to apply not only to the divorce, marital property and child custody claims themselves, but also to other claims arising from what are essentially domestic relations matters. "The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity wold still make abstention appropriate." *Mojica v. Nogueras-Cartagena*, 573 F. Supp. 2d 520, 523 (D. P.R. 2008) (citing *Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir. 1974) (in a case where the parties -- former spouses -- disagreed as to the interpretation of a divorce decree, the First Circuit stated that "in any event it is a case as to which sound federal policy as well as comity dictates abstention.")); *see also Sutter*, 639 F.2d at 843 ("[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception."); *see LaMontagne v. LaMontagne*, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the action was essentially a domestic relations contest). In light of all of the these holdings, this court should abstain from exercising jurisdiction over Plaintiff's claims and should dismiss this action in its entirety.

IX      Declination to Exercise Supplemental Jurisdiction

In the absence of any *bona fide* federal claims forming the basis for subject matter jurisdiction, the court should also decline to exercise supplemental jurisdiction over any state law claims asserted by Plaintiff; Plaintiff makes a vague reference to Defendants' negligence. *See* 28 U.S.C. § 1367(a). The exercise of such jurisdiction is discretionary, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), and a federal court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims drop out of the action before trial. *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (dismissal of state claim appropriate when no "legitimate" federal question remained in advance of trial); *accord Rose v. Baystate Med. Ctr., Inc.*, 985 F. Supp. 211, 218-219 (D. Mass. 1997). Here, too, Plaintiff's claims arising under Massachusetts law should be dismissed without prejudice to filing in state court, if he is permitted to do so.

## CONCLUSION

Based on the foregoing, it is hereby Ordered, subject to the conditions set forth above, that Plaintiff's Motion to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED. Otherwise, for the reasons stated, the court RECOMMENDS that this action be dismissed except to the extent Plaintiff may have asserted any state law claims over which the court should decline to exercise supplemental jurisdiction.[8]

---

[8] Plaintiff is advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is

        /s/   Kenneth P. Neiman  
        KENNETH P. NEIMAN  
        UNITED STATES MAGISTRATE JUDGE

June 11, 2012

---

made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.